**Frank Ezzat TABBAH**

v.

**UNITED STATES of America.**

No. 14799.

United States Court of Appeals
Fifth Circuit.

Dec. 15, 1954.

Rehearing Denied Jan. 14, 1955.

Joseph A. Calamia, E. B. Elfers, Calamia & Chew, El Paso, Tex., for appellant.

Francis C. Broaddus, Jr., Asst. U. S. Atty., El Paso, Tex., Charles F. Herring, U. S. Atty., Austin, Tex., for appellee.

Before HOLMES and TUTTLE, Circuit Judges, and ALLRED, District Judge.

TUTTLE, Circuit Judge.

This appeal presents the single question whether the trial court erred in failing to exclude the testimony of the divorced wife of the accused as to a telephone conversation she heard, while they were married, at his place of business when she and employees of the store were present under such circumstances, as she testified on cross-examination by accused's counsel, that she thought the employees could hear the conversation too.

The accused was tried and convicted on four counts for violating § 659 of Title 18 U.S.C. for knowingly receiving and possessing property stolen from interstate shipments. The accused and the government's attorney stipulated that the only issue presented to this court was that arising from the admission by the trial court of the testimony of the divorced wife of appellant.

Although the record does not indicate that the questioned testimony was objected to on the specific ground of privileged communication between husband and wife,[1] both the accused and the gov-

1. "Q. Do you ever recall your husband, your then husband, this defendant (indicating), Frank Tabbah, receiving a telephone call from Victor Apodaca?  A.

ernment have treated the matter in this light and we shall consider it in that light.

■ It will thus be seen that what is objected to is testimony by a former wife not as to a conversation between her husband and herself, but between her husband and a third party. The record further discloses that the conversation was not made in the privacy of the home or under circumstances that surround it with any of the indicia of confidentiality as between husband and wife, for not only was it made with a third person, but also it was made in the presence of others. The proof of this latter fact, in the form in which it was received,[2] would be incompetent had it not been made on cross-examination by appellant's counsel. As it is, the court and jury must consider it as being properly in the evidence.

As stated above, appellant did not clearly state to the trial court the precise basis for the privilege claimed. The same is the situation here. However, since the appellant cites several cases in which there is raised the issue as to the right of the accused in a criminal case to prevent the testimony of a former wife as to conversations or communications with him, we assume that the basis of appellant's appeal is that he claims the court below erred in not recognizing such a right. See Blau v. United States, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306, and Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358. Appellant concedes that divorce removes the bar of incompetency which would be available if the marriage had not been dissolved.

■ There are two answers to this contention. The first is that the testimony here was not as to a conversation with the wife, it was rather as to an act, i. e. a telephone conversation to which the wife was not a party. The Supreme Court stated in the Pereira case, 347 U.S. 1, 6, 74 S.Ct. 358, 361: "The privilege, generally, extends only to utterances, and not to acts [Wigmore, Evidence] § 2337. A review of Mrs. Joyce's testimony reveals that it involved primarily statements made in the presence of Brading or Miss Joyner, or both, acts of Pereira *which did not amount to communications, * * *.*" [Emphasis supplied.] The discussion in Wigmore, referred to in this quotation, says: "The privilege has for its object the security from apprehension of disclosure,—a security in consequence of which confidences will be freely given and not withheld. The pro-

---

Well, I remember him talking to someone he called 'Vic.'

"Q. You did hear your husband talking on the phone with a person he called 'Vic'? A. Yes, I did.

"Q. Will you state here what your end, or the end that you heard, of the conversation was? A. I heard him say—

"The Court: Objection sustained.

"Mr. Elfers: If the Court please, I think that is inadmissible.

"Mr. Broaddus: May I approach the bench, Your Honor?

"(Counsel for both sides then approached the bench and conferred with the Court in a low tone of voice, after which they returned to their respective tables).

"The Court: Let the record show, Mr. Reporter, that the Court will admit the testimony that the Government now seeks to elicit as to what she heard her husband, or her then husband, say to somebody, else, but the witness will not testify to anything in the conversation between herself and her husband; to which the defendant excepts."

2. "You say you were employed during that period? A. I mean I was a student at the college.

"Q. And there was no one except you and Mr. Tabbah in the store that would hear that telephone call at the time of that conversation? A. The employees were there.

"Q. You think they could hear it too? A. Yes.

"Q. Where was the phone in the store? A. It is by an archway between the main store and the shoe department, that is one extension.

"Q. Where were you at the time you were listening to it? A. As nearly as I could. I was standing by the cash register.

"Q. Standing where? A. Near the cash register.

"Q. And where is that in the store? A. About five feet away, possibly."

tection therefore extends only to *communications*, i. - e. utterances, not *acts.*" This clearly refers to communications or utterances to the wife and not a communications or utterance to another. Testimony as to such a communication to another is as to an act rather than as to a communication between husband and wife.

■ The second answer is that, even if the general rule applies to a situation where the wife overheard a conversation between her husband and another on the theory that this amounted to a communication between husband and wife, there is an exception to the rule where the communication is not really confidential. This point is also touched upon in the Pereira case, 347 U.S. 1, 6, 74 S.Ct. 358, 361, where the court says: "Although marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private. Blau v. United States, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306; Wolfle v. United States, 291 U.S. 7, 54 S. Ct. 279, 78 L.Ed. 617. The presence of a third party negatives the presumption of privacy. Wigmore, Evidence, § 2336. So too, the intention that the information conveyed be transmitted to a third person. Id., § 2336."

■ Clearly here there was a communication with a third person, and this would rebut the presumption of privacy. In point of fact, since the act about which the wife testified was the communication to the third person, it is even clearer that there was no issue here as to the right of the husband to confide freely to his wife, because that is not what he was attempting to do. Finally, there is the testimony from which the jury could conclude that there was no effort to keep the conversation with the third party away from the ears of even the employees of the accused.

We know of no rule of evidence, and we know of no public policy that would support such rule if it should be put forward, that gives an accused such privilege as is here claimed.

The trial court having committed no error in admitting the evidence complained of, the judgment is therefore Affirmed.