**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles W. KLAYER,**
**Defendant-Appellant.**

**No. 82–5228.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 1, 1983.

Decided May 23, 1983.

John B. Southard, Jr. (argued), Middletown, Ky. (court-appointed), for defendant-appellant.

Ronald E. Meredith, U.S. Atty., Hancy Jones, III, Asst. U.S. Atty. (argued), Louisville, Ky., for plaintiff-appellee.

Before KRUPANSKY, Circuit Judge, PHILLIPS, Senior Circuit Judge, and HILLMAN, District Judge.*

KRUPANSKY, Circuit Judge.

This is a direct appeal by Charles W. Klayer (Klayer) from his convictions for mail fraud and wire fraud, .18 U.S.C. §§ 1341, 1343, in a jury trial in the Western District of Kentucky. Klayer, who was previously convicted by a federal jury on 16 counts of bank fraud, now raises three assignments of error addressing the conduct of the trial judge, the propriety of testimony by his ex-wife, and the introduction into evidence for impeachment purposes of Klayer's prior conviction in the event that he elected to testify.

The trial of the instant case was accomplished in a single day and involved simply the charge that Klayer had filed a fraudulent insurance claim for a $4,000 silver tray which he listed as having been stolen. His wife, however, repudiated Klayer's assertion and testified that they, the Klayers, never owned a silver tea service tray. The jury convicted Klayer. The trial judge, having considered the defendant's prior record of convictions, imposed a five-year prison sentence on each of two counts to be served concurrently. The present timely appeal ensued.

■ Initially, Klayer argues that the conduct and demeanor of the trial judge conveyed a bias against the defendant in the presence of the jury that denied him a fair trial. A review of the record forcefully discloses that the conduct complained of was simply basic trial management and resulted from counsel's lack of familiarity with elementary rules of federal practice and procedure.

While this Court has long adhered to the firm position that a trial judge must maintain "impartiality in demeanor as well as in actions", *United States v. Hickman,* 592 F.2d 931, 933 (6th Cir.1979), this Court has also explicitly recognized that "[i]f the attorneys in a case are unprepared or obstreperous, judicial intervention is often called for." *Id.* On review of the record in the instant case, it is apparent that appellant's characterization of the nature and scope of the trial judge's conduct is plainly without merit.

* The Hon. Douglas W. Hillman, United States District Court for the Western District of Michigan, sitting by designation.

Klayer's second assignment of error asserts that the trial court erred in permitting his ex-wife, Connie Bryant (Bryant), to testify that the Klayers never owned a $4,000 silver tea service tray and that she refused her ex-husband's request to sign the fraudulent insurance claim. The district judge ruled that Bryant was competent to testify to all but "confidential marital communications" and that Klayer had no general privilege to foreclose her competent testimony.

Fed.R.Evid. 501 provides that, except as otherwise explicitly prescribed or when controlled by state law, the privilege of a witness is to "be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." In *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the Supreme Court analyzed the common law privilege of the accused to preclude the testimony of a spouse. The Court found that the underlying concept of the legal unity of a husband and wife was both "outmoded" in light of the legal status acquired by women, and "unpersuasive" as a contemporary model of marital harmony. *Id.* at 52, 100 S.Ct. at 913. Consequently, the Court concluded that " 'reason and experience' no longer justify so sweeping a rule" as that which permitted a defendant to completely bar the testimony of a spouse. *Id.* at 53, 100 S.Ct. at 913. Instead, *Trammel* pronounced the rule that "the witness-spouse alone has a privilege to refuse to testify adversely." *Id.*

Having determined that no privilege based upon the legal relationship of husband and wife between defendant and the witness would be recognized in the defendant, the *Trammel* Court stated that a privilege founded upon the expectation of confidentiality in private communications between spouses would meet the "reason and experience" test of Rule 501. *Id.* at 51, 100 S.Ct. at 912. *Trammel* specifically noted that the holdings of *Wolfe v. United States,* 291 U.S. 7, 14, 54 S.Ct. 279, 280, 78 L.Ed. 617 (1934) ("Communications between the spouses, privately made, are generally assumed to have been confidential, and hence they are privileged."), and *Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951), remained valid. *Id.* 445 U.S. at 45, n. 5, 100 S.Ct. at 909, n. 5, 51, 100 S.Ct. at 912. The Court observed, however, that private marital communications do not encompass "[evidence] of communications made in the presence of third persons." *Id.* See also Weinstein's Evidence, Privileges ¶ 501[03], p. 501–29, n. 17 (1982).

In the case at bar, Klayer argues that it was error to receive the following testimony:

Q. [by the assistant U.S. attorney]: What contact [with the insurance company] did you have?

A. [by Klayer's ex-wife, Connie Bryant]: Charles called me, and I was in a meeting at the office, one of my schools. Charles called me and said he was at the—with the insurance adjuster and asked my permission to sign the papers for the claim. I asked—I said, "No, I'd rather he didn't sign my name to any papers," and he explained it was all very simple, you know. He wanted my permission. And I said no. And at that time the insurance adjuster was on the phone.

 It is significant that both the insurance adjuster and Klayer were "on the phone" when Klayer requested permission from his wife to affix her signature to the insurance claim; the presence of the third party qualified the conversation as an exception to the privilege for confidential marital communications. Moreover, to the extent that Klayer attempted to exclude as privileged Bryant's testimony that they never owned a $4,000 silver tray, this Court approves the well-settled body of authority which holds that the privilege extends "only to utterances or expressions intended by one spouse to convey a message to the other," *United States v. Bolzer,* 556 F.2d 948, 951 (9th Cir.1977), and does not reach evidence concerning "objective facts having no *per se* effect" on the defendant. *United States v. Brown,* 605 F.2d 389, 396 (8th Cir.)

*cert. denied* 444 U.S. 972, 100 S.Ct. 466, 62 L.Ed.2d 387 (1977).

■ Klayer finally asserts that it was error for the trial judge to rule that he could be impeached by his prior conviction for bank fraud even though that conviction was on appeal. Klayer's sole authority for his position is *Commonwealth v. Duvall,* 548 S.W.2d 832 (Ky.1977) wherein the Supreme Court of Kentucky opined:

> The trial court correctly held that under the principle of *Foure v. Commonwealth,* 214 Ky. 620, 283 S.W. 958, 962 (1926), for impeachment purposes a judgment of conviction that has been appealed is not final until the mandate is issued. The Attorney-General urges that the rule be relaxed and brought into line with Rule 609(e) of the Federal Rules of Evidence, under which the pendency of an appeal does not prevent proof of the conviction from which the appeal was taken. This, it is said, is the majority rule in the country. Cf. Annotation, 16 ALR 2d 726. We think, however, that until the litigation is ended and the conviction has survived the appeal it should not be admissible. Until then the defendant's day in court is not over. We decline to overthrow what we consider to be a sound principle.

As the Kentucky panel itself observed, Fed.R.Evid. 609(e) expressly permits a witness to be impeached by a prior conviction still pending appeal:

> (e) Pendency of appeal.—The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

The second sentence of the Rule permits rehabilitation of an impeached witness by offering evidence of a pending appeal, thereby permitting the jury to mitigate, if it elects to do so, the original impeachment. *See* Weinstein's Evidence, *supra,* ¶ 609[10]. The only generally recognized exception to this Rule is that a defendant may not be impeached on general credibility by a conviction obtained where he was not represented by counsel. *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

The present appeal is, at best, no more than an invitation to abandon the direct requirements of Fed.R.Civ.P. 609(e) in favor of Kentucky's minority position. This Court is without authority to reject the Rules adopted by Congress even if it were so inclined, and Kentucky's position as a minority jurisdiction on this point is not persuasive.

Wherefore, the appellant's assignments of error are adjudged to be without merit and the conviction is hereby AFFIRMED.